IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS



**FILED**
January 21, 2022 08:18 AM
ST-2018-CR-00244
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

PEOPLE OF THE VIRGIN ISLANDS,  )
            )
     Plaintiff,   )
   v.        )  CRIMINAL NO. ST-18-CR-244
            )
AUBREY A. FRETT,    )
            )  2022 VI Super 6U
     Defendant.  )
            )

**EUGENE JAMES CONNOR, ESQ.**
Assistant Attorney General
V.I. Department of Justice
34-38 Kronprindsens Gade
St. Thomas, V.I. 00802
*Attorney for the People of the Virgin Islands*

**PAULA D. NORKAITIS, ESQ.**
Assistant Territorial Public Defender
P.O. Box 6040
St. Thomas, V.I. 00804
*Attorney for the Defendant*

**CARTY, RENÉE GUMBS**, Judge

## MEMORANDUM OPINION

¶1 **BEFORE THIS COURT** is Defendant's motion to suppress filed on September 10, 2021. The People of the Virgin Islands (the "People") filed their opposition on October 23, 2021, and a suppression hearing was held on October 26, 2021, via Zoom. Defendant's motion seeks to suppress a potential out-of-court identification and any in-court identification to be made at trial by victim Traveson Bailey ("Bailey"). Defendant also seeks to suppress statements Frett made to law enforcement the day after the shooting incident.

¶2 The Court heard the sworn testimonies of Virgin Islands Police Detective Alex Dorsett ("Detective Dorsett") and Officer Vernon Carr ("Officer Carr"). At the conclusion of the hearing, the Court took the matter under advisement. For the reasons set forth herein, Defendant's motion to suppress identification and statements will be denied.

## I.    FACTUAL BACKGROUND

¶3    On June 26, 2018, at approximately 11:25 am, Bailey visited Lima Grocery in Prindsens Gade (commonly known as "Goat street") in Hospital Ground, St. Thomas, U.S. Virgin Islands. Def's Ex. M-2 (June 27, 2018, Supplemental Report). According to Bailey, a tall, light-skinned, heavyset, bearded man with twists in his hair, later identified as Aubrey Frett, blocked him from entering the store by putting his hand across the doorway. Def's Ex. M-1 (October 18, 2018, Dorsett Aff. ¶¶ 8, 21). Frett asked Bailey why he was looking at him and a verbal altercation ensued. Def's Ex. M-1 (October 18, 2018, Dorsett Aff. ¶ 9). Frett exited Lima Grocery and warned Bailey not to return. Def's Ex. M-1 (October 18, 2018, Dorsett Aff. ¶ 9). Bailey entered Lima Grocery and purchased a beverage. Def's Ex. M-1 (October 18, 2018, Dorsett Aff. ¶ 10). Once finished with his purchase, Bailey walked towards Bergs Home Housing Community ("Bergs Home") in Hospital Ground through the Department of Human Services' parking lot. Def's Ex. M-1 (October 18, 2018, Dorsett Aff. ¶ 11). Upon arriving at Bergs Home, Bailey suddenly heard someone behind him say, "yeah." Def's Ex. M-1 (October 18, 2018, Dorsett Aff. ¶ 11). Before Bailey could turn around, he heard gunshots, was struck, and fell to the ground. Def's Ex. M-1 (October 18, 2018, Dorsett Aff. ¶ 11). Upon falling, Bailey realized he was shot. Def's Ex. M-1 (October 18, 2018, Dorsett Aff. ¶ 11). As Bailey laid on the ground, he observed a dark-colored sedan automotive, akin to a Toyota Camry or Honda Accord, flee the area at a high rate of speed. Def's Ex. M-1 (October 18, 2018, Dorsett Aff. ¶ 13). Bailey could not identify the individual that shot him but was able to call 911 and report the incident. Def's Ex. M-3 (June 26, 2018, Supplemental Report). Bailey believed this was the same man he encountered at Lima Grocery. Def's Ex. M-3 (June 26, 2018, Supplemental Report).

¶4      Bailey suffered a single gunshot wound and was shortly thereafter transported to Schneider Regional Medical Center for medical treatment. Def's Ex. M-3 (June 26, 2018, Supplemental Report). As part of his investigation, Detective Dorsett drove to Schneider Regional Medical Center and took Bailey's statement. Def's Ex. M-3 (June 26, 2018, Supplemental Report). Bailey told Detective Dorsett that as he walked towards Bergs Home, he heard shots fire and then felt a pain in his back. Def's Ex. M-3 (June 26, 2018, Supplemental Report). Bailey then told Detective Dorsett he dialed 911 and believed he saw the shooter drive off in a heavily tinted black Honda or Toyota Camry. Def's Ex. M-3 (June 26, 2018, Supplemental Report). Detective Dorsett stated Bailey's statement was stopped abruptly because Bailey was rushed into emergency surgery.

¶5      Continuing his investigation, Detective Dorsett obtained Lima Grocery's surveillance footage from that day and immediately recognized Frett as the man that impeded Bailey's entrance to the store. Def's Ex. M-1 (October 18, 2018, Dorsett Aff. ¶¶ 15-16). Detective Dorsett is personally familiar with Frett from previous interactions while employed with the Virgin Islands Police Department ("VIPD"). Def's Ex. M-1 (October 18, 2018, Dorsett Aff. ¶ 16). The surveillance footage also showed a dark-colored, four-door vehicle with tinted windows heading east near Lima Grocery minutes after Bailey exited Lima Grocery. Def's Ex. M-1 (October 18, 2018, Dorsett Aff. ¶ 17). The VIPD conducted a search of Bureau of Motor Vehicles ("BMV") records where Detective Dorsett learned Frett's mother owns a black, 2016, four-door Honda Accord with tinted windows. Def's Ex. M-1 (October 18, 2018, Dorsett Aff. ¶ 18).

¶6      On June 27, 2018, units from the VIPD Special Operations Bureau travelled to Frett's residence, #1527 Prindsens Gade, to take him into custody for questioning. Def's Ex. M-1 (October 18, 2018, Dorsett Aff. ¶ 19). Frett was apprehended near his home. After providing Frett

with the requisite Miranda warnings, Detective Dorsett and Sergeant Mario Stout provided Frett a

waiver of rights form. Def's Ex. M-1 (October 18, 2018, Dorsett Aff. ¶ 20). Frett read, signed, and

dated the waiver. Def's Ex. M-4 ("Warning as to Rights" form). Detective Dorsett testified the

interrogation took place from approximately 3:15 p.m. to 4:00 p.m. During the interrogation, Frett

admitted to confronting Bailey at Lima Grocery but denied shooting him. Def's Ex. M-1 (October

18, 2018, Dorsett Aff. ¶ 21). Detective Dorsett testified he drafted a seven-page report of this

statement which Frett signed and was then released from custody.

¶7      Prior to the hearing on October 26, 2021, Defendant reiterated the need for discovery

materials to be served by the government. Defendant filed a second supplemental discovery

request and advised the Court he still had not received copies of the alleged statements provided

to Detective Dorsett and other evidence related to this case. The People assured the Court the

discovery process was completed by May 2019, time and again. However, by the end of the hearing

it was clear the People withheld documents from Defendant. In fact, as of the date of the hearing

Defendant was still unaware of an out-of-court identification, if any, made by Bailey. However,

Defendant specifically filed his motion believing that in the event a photo array or some form of

out-of-court identification exists, Defendant was not in possession of such identification evidence,

and therefore it should be suppressed. More particularly, Bailey did not and could not identify the

shooter as Bailey was shot in the back.

## II.    LEGAL DISCUSSION

¶8      Defendant argues any out-of-court identification or in-court identification must be

suppressed because Bailey was shot in the back and there is no photo array or any evidence that

identifies Frett as the perpetrator. Also, Defendant argues that if there currently is no out-of-court

identification, then Bailey identifying Defendant now in a pretrial procedure would be unreliable and ultimately inadmissible. The People admit Bailey made no out-of-court identification of Defendant as the shooter and argues the request to suppress Bailey's identification of Frett is "frivolous" because there is no out-of-court identification to suppress. In other words, the customary investigation practice of using a photo array to identify suspects was never done, hence "no identification procedure to attack." The People assert this is a case of circumstantial evidence.

¶9    Next, Defendant also argues the seven-page written statement and oral statements provided to law enforcement were coerced and involuntary which violated Frett's constitutional rights. Conversely, the People argue Frett waived his constitutional rights after he was provided the *Miranda* warnings and Frett signed the waiver, fundamentally demonstrating Frett understood his rights and did not seek legal counsel. Therefore, the statements provided to the VIPD were of Frett's own volition and must not be suppressed.

## A. Defendant's Motion to Suppress Any Out-Of-Court Identification is Ineffectual because There Exists No Out-Of-Court Identification.

### 1. *Standard of Review when Suppressing Witness Out-of-Court Identification.*

¶10    A pre-trial identification procedure violates constitutional due process if the procedure is so unnecessarily suggestive as to create a substantial likelihood of irreparable misidentification. *Garcia v. Government of the Virgin Islands*, 48 V.I. 530, 536 (D.V.I. App. Div. 2006) (citing *Neil v. Biggers*, 409 U.S. 188, 196-99 (1972)). Courts employ a two-part test to determine whether an identification procedure violates constitutional due process. *Richards v. People*, 53 V.I. 379, 387 (V.I. 2010). First, the court must determine whether the identification procedure was unnecessarily suggestive. *Richards*, 53 V.I. at 387. If the procedure was not unnecessarily suggestive, the inquiry

ends there. However, if it was unnecessarily suggestive, the court then decides whether the identification that occurred was reliable despite the suggestive procedure. *Id.*

¶11    An out of court identification is reliable so long as the "totality of the circumstances" do not give rise to a "substantial likelihood of misidentification. *See Potter v. People of the V.I.*, 56 V.I. 779, 789 (V.I. 2012). When evaluating the totality of the circumstances, courts consider five factors: (1.) the opportunity of the witness to view the criminal at the time of the crime; (2.) the witness' degree of attention; (3.) the accuracy of the witness' prior description of the criminal; (4.) the level of certainty demonstrated by the witness at the identification; (5.) and the length of time between the crime and the identification. *People of the V.I. v. Boyce*, No. SX-13-CR-092, 2014 V.I. LEXIS 84, at *4-5 (Super. Ct. Oct. 6, 2014) (quoting *Biggers*, at 199-200). Generally, this standard applies to out-of-court identifications such as a photo array or a line-up.

¶12    Here, the circumstances of this case are unique and do not require a legal standard of review. At the time of this hearing, the People failed to serve all discovery materials which directly impacted Defendant's motion to suppress. In anticipation thereof and considering the facts, Defendant preemptively asks this Court to suppress any out-of-court identification regardless of whether such evidence existed. Further, Defendant filed this motion to suppress also in anticipation of an in-court identification, as a direct result of no out-of-court identification. However, because there was no out-of-court identification, there is nothing to suppress.

### 2. *Analysis*

¶13    In his motion, Defendant argues the lack of evidence and the four-month delay between the incident and the arrest; and any belated out-of-court identification will render any identification unduly suggestive and unreliable. Defendant contends Bailey was shot from behind and, according

to Bailey, unable to see the shooter. Bailey could only describe to Detective Dorsett a vehicle that sped away as he laid on the ground. Based on the testimony adduced at the hearing, there was no investigative follow-up by law enforcement to obtain an out-of-court identification from Bailey. Also, Bailey immediately sought emergency medical treatment on the continental United States, hence no opportunity to conduct a photo array. Therefore, any out-of-court identification now would be impermissibly suggestive.

¶14     The People in their written opposition and during the hearing established Bailey made no out-of-court-identification of Frett. They assert this is a circumstantial case as Bailey identified Frett as the person he had the confrontation with at Lima Grocery; and the car on the surveillance footage matches the description of the car Bailey identified that immediately fled the area which matches the description of Frett's mother's car.

¶15     There are no mandates requiring the VIPD to conduct out-of-court identifications, nor is it the role of the Court to require law enforcement to do so. Accordingly, there is nothing to suggest an out-of-court identification will be conducted. For this reason, Defendant's argument is premature, as there does not exist an out-of-court identification made by Bailey to suppress. Thus, Defendant's motion is ineffectual, and therefore must be denied.

**B.      Defendant's Motion to Suppress In-Court Identification is Denied Because the Lack of Pretrial Identification Does Not Preclude an In-Court Identification.**

¶16     Defendant insists the lack of out-of-court identification interdicts Bailey from identifying Frett at trial. Although there was no out-of-court identification, the People ask this Court to preserve the opportunity to make an in-court identification of the person Bailey had the verbal confrontation with at Lima Grocery.

¶17    Courts have held the absence of an out-of-court identification does not restrict the government's ability to make an in-court identification, only weaken the strength of such testimony. The lack of an out-of-court identification may significantly dilute the strength of a subsequent in-court identification, but it does not render an in-court identification inadmissible. *State v. Wooten*, 631 A.2d 271, 282 (Conn. 1993). A witness' inability to identify a defendant from an out-of-court identification or pretrial practice does not affect the admissibility of the in-court identification, only its weight and credibility of the witness' testimony. *Commonwealth. v. Washington*, 927 A.2d 586, 601 (Pa. 2007); *United States v. Brown*, 200 F.3d 700, 707 (10th Cir. 1999). Other courts also hold a witness for identification at trial may testify without previously attending an out-of-court identification procedure. *See U.S. v. Dorantes*, 471 F.2d 298 (3d Cir. 1972); *Davis v. State*, 560 So. 2d 1346 (Fla. 3d DCA 1990); *People v. Patterson*, 88 Ill. App. 3d 168, 43 Ill. Dec. 396, 410 N.E.2d 396, 403 (1st Dist. 1980); *State v. Jones*, 565 So. 2d 1023 (La. Ct. App. 1st Cir. 1990), writ denied, 585 So. 2d 565 (La. 1991); *State v. Clay*, 783 S.W.2d 419 (Mo. Ct. App. E.D. 1989). Although the prosecution may ask a witness to identify the defendant during trial, the defendant also maintains the right to cross-examine or immediately *voir dire* the witness to the fullest extent concerning the circumstances or lack of previous identification. *See Wooten*, 631 A.2d at 282-83.

¶18    At jury trials, the jury, not the Court, determines whether a witness' testimony is truthful and reliable. The Court should not act as the gatekeeper of such testimony and should instead allow the jury to determine the witness's credibility and truthfulness of the testimony. The Court preserves the People's privilege of providing such testimony as well as allowing Defendant to fully

cross-examine the witness. Hence, the Court will not preclude a proper in-court identification of Frett and the motion will be denied.

### C. Defendant's Post-Miranda Statements Will Not Be Suppressed Because the Statements Were Made of His Own Volition.

#### 1. *Standard of Review for Statements Made During Custodial Interrogation.*

¶19 Miranda warnings are required for custodial interrogations. *See Castillo v. People*, 59 V.I. 240, 265 (V.I. 2013) (citing *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980)). A suspect is "in custody" when they have been "deprived of freedom of action in any significant way." *Ramirez v. People*, 56 V.I. 409, 419 (V.I. 2012) (citing *United States v. Thompson*, 496 F.3d 807, 810 (7th Cir. 2007)). However, a suspect can waive his rights by making a statement after Miranda warnings have been given. *Id.* (citing *Edwards v. Arizona*, 451 U.S. 477, 485-86 (1981)). A defendant can only waive his constitutional rights knowingly, voluntarily, and without coercion. *See People v. Azzam*, No. ST-2016-CR-00232, 2017 WL 5514375, at *1, 2017 V.I. LEXIS 157, at *3 (V.I. Super. Ct. Nov. 14, 2017) (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

¶20 The burden rests on the defendant to establish the evidence sought to be suppressed was illegally obtained. *Azzam*, 2017 WL 5514375, at *1, 2017 V.I. LEXIS 157, at *2. Once the defendant alleges facts demonstrating he was in custody and subject to an interrogation, the burden then shifts to the People to prove by a preponderance of the evidence that the police complied with Miranda and that the statement was voluntary." *Id.* (citing *Colorado v. Connelly*, 479 U.S. 157 (1986)).

#### 2. *Analysis*

¶21 In this case, both parties agree Defendant was in custody and an interrogation occurred: Defendant was transported to the police station, given Miranda warnings, and then asked if he had

any questions. Detective Dorsett testified he wrote down Frett's statement but as it stands this statement has not been served by the People to Defendant. In sum, Detective Dorsett testified Frett admitted to being present at Lima Grocery and argued with Bailey at the entrance, but Frett denied shooting Bailey.

¶22    Defendant baldly asserts his alleged statements to law enforcement were coerced or were not of his own volition. With the burden shifting to the government, the People produced the signed waiver warning Frett of his rights. The waiver includes a description of rights, and the opportunity to obtain legal counsel. The "warning as to rights" form states:

> You must understand your rights before we ask you any questions. You have the right to remain silent. Anything you say can be used against you in court, or other proceedings. You have the right to talk to a lawyer for advice before we question you and to have him with you during questioning.

> If you cannot afford a lawyer and want one, a lawyer will be appointed for you by the court free of charge and at no cost to you. If you decide to answer questions now without a lawyer present, you will still have the right to stop the questioning at any time until you talk to a lawyer.

¶23    Def's Ex. M-4 ("Warning as to Rights" form). Detective Dorsett testified Frett was provided this statement and Frett signed beneath where it provides: "I have read this statement of my rights and it has been read to me, I understand what my rights are." Frett also signed underneath the waiver language stating:

> I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me, and no pressure or force of any kind has been used against me. I hereby voluntarily and intentionally waive my rights and am willing to make a statement and answer questions.

¶24    Def's Ex. M-4 ("Warning as to Rights" form). Law enforcement both verbally advised Frett of his rights and provided Frett with a written "warning as to rights" form. Defendant's

signature is seen at the bottom of each section signifying Frett read and understood his constitutional rights and elected to speak with Detective Dorsett and other VIPD law enforcement officers. Furthermore, Defendant provided no evidence of coercion or that Frett is unable to read or understand English. This waiver indicates any statements made during this custodial interrogation were of Defendant's own volition. Therefore, the Court will deny Defendant's motion to suppress statement(s) made to law enforcement.

## III.    CONCLUSION

¶25    The lack of out-of-court identification renders Defendant's request to suppress the absent out-of-court identification ineffectual. Similarly, the Court will not suppress an in-court identification because the reliability of such testimony is not for the Court to determine but for the jury to evaluate. Finally, Defendant was informed of his constitutional rights while in custody and waived those rights when he voluntarily provided a statement to law enforcement. Given the foregoing reasons, Defendant's motion to suppress will be denied. An order of even date follows.

Dated: January 21, 2022

Renée Gumbs Carty
Judge of the Superior Court
of the Virgin Islands

ATTEST:
Tamara Charles
Clerk of the Court

By: _____
Latoya Camacho
Court Clerk Supervisor  1/24/2022

# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

PEOPLE OF THE VIRGIN ISLANDS, )
)
Plaintiff, )
v. ) CASE NO. ST-18-CR-244
)
AUBREY A. FRETT, )
) 2022 VI Super 6U
Defendant. )
)

## ORDER

**THIS MATTER** came before the Court on October 26, 2021, for a suppression hearing, via Zoom. Defendant filed his motion to suppress on September 10, 2021, and the People of the Virgin Islands filed their opposition on October 23, 2021. Based on the representations made by counsel, the testimony adduced at the hearing, and for the reasons set forth on the record, it is hereby

**ORDERED** that Defendant's motion to suppress is **DENIED**; and it is further

**ORDERED** that a copy of this Order shall be distributed to Assistant Attorney General Eugene James Connor, Jr., Esquire, Territorial Public Defender Paula D. Norkaitis, Esquire, and Samuel L. Joseph, Esquire, Chief Territorial Public Defender.

Dated: January 21, 2022

Renée Gumbs Carty
Judge of the Superior Court
of the Virgin Islands

ATTEST:
Tamara Charles
Clerk of the Court

By:
for Latoya Camacho
Court Clerk Supervisor  1/24/2022