

**FILED**
May 05, 2023 03:54 PM
ST-2022-CR-00020
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

PEOPLE OF THE VIRGIN ISLANDS,      )
     )
             Plaintiff,      )
     )     **Case No. ST-2022-CR-00020**
    vs.      )
     )
JAQUIN ELISHA PHIPPS      )
     )
             Defendant.      )
_____ )

Cite as 2023 VI Super 22U

**MEMORANDUM OPINION**

**THIS MATTER** is before the Court on Defendant's First and Second Motions to Suppress, filed on October 7, 2022, pursuant to V.I. R. Crim. P. 12(b)(3)(C).

A suppression hearing was held on March 9, 2023, where the People were represented by Attorney Eugene James Connor Jr., and Defendant Jaquin Elisha Phipps ("Phipps") was represented by Attorney Adam G. Christian. The only witness was Virgin Islands Police Department Detective Yordona Loblack ("Det. Loblack"), who testified for the People.

At the conclusion of the hearing the Court took the matter under advisement. For the reasons set forth herein both the First and Second Motion to Suppress will be denied.

**FACTUAL BACKGROUND**

The facts below derive from Detective Loblack's testimony at the March 9, 2023, suppression hearing ("Suppression Hearing") and from Det. Loblack's Affidavit in Support of Arrest Warrant ("Affidavit"), admitted into the record as Exhibit M3. Det. Loblack has been with the Virgin Islands Police Department ("VIPD") for 10 years, and became a detective more than one year ago.

On December 4, 2021, Detective Loblack reported to a robbery that occurred in Havensight, St. Thomas ("Dec. 4 incident") around 10:30 p.m. Detective Loblack made contact with the victim, his fiancée, and the fiancée's cousin. The victim recounted that while they were walking, a gray or silver Toyota ("gray/silver Toyota") passed them travelling in the opposite direction and the car then came back and a male in a red hoodie approached them and touched the victim's chest, trying to take the 14K gold Gucci chain ("14K gold Gucci chain") the victim was wearing.

The victim and male in the red hoodie began to wrestle. Then a second male, dressed all in black, approached with a gun and said, "leave my friend alone", and at that point the two perpetrators took the 14K gold Gucci chain and ran off. None of the three individuals present identified Phipps as the driver of the gray/silver Toyota. They also never identified the person in the red hoodie or the person dressed in all black.

Det. Loblack reviewed video surveillance of the Dec. 4 incident, and while she could not make any positive identifications from the footage, she discerned the license plate number of the gray/silver Toyota and performed a registration check with the Bureau of Motor Vehicles. The license plate number was registered to a blue Toyota Yaris; Det. Loblack, then, contacted the owner of the Yaris, who stated that the Yaris is inoperable and parked at her home, and she does not own a gray/silver Toyota Corolla.

The owner of the Yaris then called home to check the Yaris, and she learned that its license plates were missing. Det. Loblack showed the owner of the Yaris a picture of the gray/silver Toyota taken from the Havensight surveillance video, and the owner of the Yaris stated the Toyota looked familiar and she had seen it around.

On December 7, 2021, Det. Loblack and another detective drove around the area where the owner of the Yaris lived. Det. Loblack identified a silver Toyota Corolla similar to the one from Dec. 4 incident, which was distinctive because its roof was rusted and there were stains on the hood. That same day, Det. Loblack spoke with the registered owner of that Corolla, Gerraina Phipps ("Gerraina") and she confirmed she owned the 2019 Toyota Corolla ("2019 Corolla") and that her son, Phipps, generally operated it. Gerraina conceded to Det. Loblack that on one or two occasions the vehicle had been operated by others, but that none of those instances occurred during the timeframe of the Dec. 4 incident that Det. Loblack was investigating. Moreover, Demoi Barrow, Phipps's codefendant in this case, likewise informed Det. Loblack that the 2019 Corolla belonged to Phipps and that Phipps normally drove it.

On the evening of December 14, 2021, Officer Francis of the VIPD conducted a traffic stop of a silver Toyota Corolla, registered to Gerraina but driven by Phipps, because of an inoperable taillight ("Dec. 14 stop"). Det. Loblack heard the description of the 2019 Corolla and vehicle registration through VIPD's Central Dispatch transmission, and she travelled to the scene. When Det. Loblack arrived, no search had been conducted.[1] Officer Francis told Det. Loblack – and she confirmed – there was an odor of marijuana emanating from the 2019 Corolla. At some point, Phipps and his three passengers were told to exit the vehicle.

Det. Loblack and Officer Francis subsequently conducted a search of the 2019 Corolla, which yielded one marijuana cigarette and a very small, mostly smoked marijuana cigarette, almost ashes. Further, Det. Loblack found a gold Gucci chain partially under the front passenger seat that

---

[1] There is no evidence on whether Officer Francis notified Phipps of the reason for the traffic stop. And Det. Loblack did not inform Phipps of his inoperable taillights.

matched the description of the 14K gold Gucci chain taken in the Dec. 4 incident, which was distinctive because it was diamond cut and had a broken clasp.

On January 12, 2022, Det. Loblack executed the Affidavit for an arrest warrant of Phipps, affirming, *inter alia*, "[t]hat, as part of the investigation, [Det. Loblack] met with and interviewed the robbery victim, [who] stated . . . [t]hat the driver (later identified as **JAQUIN PHIPPS**) remained in the vehicle" during the Dec. 4 incident. (emphasis in original). Later, at the Suppression Hearing, Det. Loblack clarified that no one ever identified Phipps as the driver during Dec. 4 incident, but that her investigation revealed he was the sole operator of the 2019 Corolla.

## DISCUSSION

Phipps now moves the Court to suppress any out-of-court identifications made, and in-court identifications that could possibly be made, of Phipps as a participant in the Dec. 4 incident ("First Motion"). Phipps also moves to suppress all evidence obtained from the Dec. 14 stop – that is, all physical evidence obtained from the warrantless search of Phipps and the vehicle and all statements made by Phipps during the Dec. 14 stop ("Second Motion").

I. **Because Phipps was never identified as a participant of the Dec. 4 incident there is no identification to suppress.**

In the First Motion, Phipps asserts that his identification as a participant in the Dec. 4 incident was unnecessarily suggestive because, at the time of filing the First Motion, the People had not presented Phipps with any discovery about who identified him, nor which identification procedures – if any – were taken by Det. Loblack. The First Motion argues Phipps' due process rights have been violated under the Fourteenth Amendment and Section Three of the Revised

Organic Act of the Virgin Islands of 1954. Thus, Phipps requests that any out-of-court and in-court identifications of him as a participant in the Dec. 4 incident be suppressed.

Under the Fourteenth Amendment, no state "shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. Pre-trial identifications that lead to a substantial likelihood of misidentification violate a person's due process rights. *People v. Frett*, 2019 VI Super 141U, ¶11 (quoting *Richards v. People*, 53 V.I. 379, 385 (V.I. 2010)). To appropriately analyze identifications the Court must first determine if the pre-trial identification procedure was unnecessarily suggestive, and, if so, it must then consider its reliability. *Id.* at ¶12; *People v. Berthier*, Super. Ct. Crim. No. ST-2020-CR-00003, 2022 WL 252099, at *7 (V.I. Super. Ct. January 27, 2022) (citing *Richards*, 53 V.I. at 393).

Nevertheless, when there is no identification process undertaken by law enforcement and/or no photo array is conducted, a motion to suppress is considered ineffectual because, in essence, there is no identity to suppress. *People v. Frett*, 2022 VI Super 6U, ¶¶8, 12, 17 (When law enforcement did not conduct an identification procedure and a defendant was not identified out-of-court, the Court found there was no identification to suppress.). Given Det. Loblack established there was no identification procedure conducted because no witnesses could identify Phipps as a participant of the Dec. 4 incident, the Court has no out-of-court identification to suppress. Nevertheless, the identification Phipps seeks to suppress involves the – "later identified" – language of Det. Loblack's Affidavit; however, that language would not classify as an identification.[2]

---

[2] An identification is an act or process whereby a witness can prove "that [the] person charged with an offense and brought before a court is the same person who committed the offense." *Identification*, Black's Law Dictionary (11th ed. 2019).

Moreover, since no one made an out of court identification of Phipps and no identification procedure was conducted, the Court finds there would be no identification to suppress in-court as well. *Frett*, 2022 VI Super at ¶¶17, 22 (finding that a "lack of an out-of-court identification may significantly dilute the strength of a subsequent in-court identification, but it does not render an in-court identification inadmissible.").[3] Indeed, a witness has the right to make an in-court identification despite not propounding a pretrial identification. *Frett*, 2022 VI Super at ¶17 (citing *State v. Wooten*, 631 A.2d 271, 282-83 (Conn. 1993) ("The right to cross-examine an identifying witness operates as a defendant's protection against the suggestiveness of any in-court identification procedure.")); *Bond v. Walker*, 68 F. Supp. 2d 287, 304 (S.D.N.Y. 1999) ("When the initial identification is in court . . . [t]he jury can observe the witness during the identification process and is able to evaluate the reliability of the initial identification.") (quoting *U.S. v. Domina*, 784 F.2d 1361, 1368 (9th Cir. 1986)). Therefore, the First Motion to Suppress will be denied.

II.    **Because the evidence obtained from the Dec. 14 stop was obtained pursuant to an automobile exception, the warrantless search is reasonable, and the Second Motion will be denied.**

In the Second Motion, Phipps requests evidence obtained from the Dec. 14 stop be suppressed because he was subject to a warrantless search, violating his Fourth Amendment rights. Phipps argues the automobile exception does not apply to the Dec. 14 stop because it is unclear whether Officer Francis and Det. Loblack could articulate the necessary probable cause to satisfy

---

[3] Given that no one identified Phipps as the driver during the Dec. 4 incident, the phrasing of Det. Loblack's Affidavit – "the driver (later identified as JAQUIN PHIPPS) remained in the vehicle" – is, at the very least, inartfully stated and, at worst, misrepresents the statements taken from witnesses. Det. Loblack confirmed during the Suppression Hearing that no one identified Phipps as the driver in the Dec. 4 incident, and she did not conduct an identification procedure; therefore, it is clear that no one had identified Phipps as the driver in the Dec. 4 incident, so there is no identification to suppress.

that warrant exception. Also, Phipps argues there were no exigent circumstances to justify the warrantless search and seizure.[4]

Under the Fourth Amendment, individuals are protected against unreasonable searches and seizures. U.S. Const. amend. IV, § 1.[5] Searches and seizures are *per se* unreasonable if they are conducted without a warrant – i.e., without prior approval by judge or magistrate – save for a few exceptions. *People v. Looby*, 68 V.I. 683, 694 (V.I. 2018); *People v. Cannergeiter*, 65 V.I. 114, 121 (V.I. Super. Ct. 2016). For instance, the automobile exception allows law enforcement to search a vehicle without a warrant if probable cause exists to believe it contains contraband. *Browne v. People of the Virgin Islands*, 56 V.I. 207, 217 (V.I. 2012).

Probable cause manifests if, when considering "the totality of the circumstances, a reasonable person would believe there is a fair probability that contraband [] will be found." *People v. Benyehudah*, Super. Ct. Crim. No. ST-15-CR-183, 2016 WL 6952568, at *9 (V.I. Super. Ct. November 23, 2016); *U.S. v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006). And the detection of marijuana odor emanating from a vehicle by law enforcement trained in the identification of narcotics is sufficient to establish probable cause to conduct a warrantless search. *Cannergeiter*, 65 V.I. at 125 n.2 and *People v. Turnbull*, Super. Ct. Crim. No. SX-11-CR-832, 2014 WL 3974537, at *5 (V.I. Super. Ct. June 23, 2014) (unpublished) (citing to *Ramos*, 443 F.3d at 308); *U.S. v. Harrison*, Case No. 17-59-GMS-1, 2018 WL 1325777, *2 (D. Del. March 15, 2018) ("[I]t remains

---

[4] An exigent circumstance is an exception to the warrant requirement when there is a hot pursuit of a suspected felon, a "possibility that evidence may be removed or destroyed, and [a] danger to the lives of officers or others." *Simmonds v. Virgin Islands*, 53 V.I. 549, 560 (V.I. 2010) (quoting *U.S. v. Coles*, 437 F.3d 361, 366 (3d Cir. 2006).

[5] The Fourth Amendment of the U.S. Constitution is applicable to the Virgin Islands pursuant to Section 3 of the Revised Organic Act of the Virgin Islands of 1954. 48 U.S.C. § 1561; *People v. Looby*, 68 V.I. 683, 694 n.6 (V.I. 2018); *Thomas v. People*, 63 V.I. 595, 605 n.3 (V.I. 2015).

well settled law . . . that the smell of marijuana, where particularized and articulable, may establish probable cause to conduct a warrantless search.").[6]

Phipps contends that because the People did not provide pictures, videos, and other information relative to the Dec. 14 stop, it is unclear whether Det. Loblack or Officer Francis had sufficient probable cause prior to conducting a warrantless search and seizure. Moreover, Phipps argues the decriminalization of cannabis prevents the automobile exception from applying here. Thus, Phipps argues a warrantless exception does not apply because the traffic stop was nothing more than a pretense to avoid the warrant process.

The Court finds, however, that the People established, through the testimony of Det. Loblack, that the Dec. 14 stop was based on an inoperable taillight, although she admits she did not ask Phipps to press on the brakes, or to turn the lights off or on to confirm they were inoperable. Indeed, Det. Loblack did not effectuate the Dec. 14 stop. But, once stopped for the traffic violation, Det. Loblack and Officer Francis smelled an odor of marijuana coming from the 2019 Corolla and then conducted a warrantless search.

In the Virgin Islands, although marijuana has been decriminalized it is not fully legalized. As such, it is still considered contraband, and the possession of less than an ounce is a civil offense, subject to forfeiture. 19 V.I.C. § 607a; *Pemberton*, ¶17; *Looby*, 68 V.I. at 698. Further, the smell of marijuana emanating from the 2019 Corolla provided Officer Francis and Det. Loblack probable

---

[6] The Court acknowledges that the law surrounding the use of marijuana was recently amended, specifically the Virgin Islands Cannabis Use Act was signed into law on January 18, 2023. Nevertheless, it appears the use of marijuana remains illegal for reasons the Court need not analyze here. However, even if the Virgin Islands Cannabis Use Act legalized the use of marijuana in limited quantities, Phipps' arrest predated the passage of the Act. Therefore, Phipps may not avail himself of any of the provisions in the Act.

cause to believe there was a fair probability that contraband would be found in the vehicle, legitimizing a warrantless search under the automobile exception. *Cannergeiter*, 65 V.I. at 124.

## CONCLUSION

Given that, as of the date of the suppression hearing, no one has identified Phipps as being involved in the Dec. 4 incident, the Court does not have, by definition, an identification to suppress. Thus, the First Motion will be denied.

Also, because Officer Francis stopped Phipps for an inoperable taillight, the odor of marijuana emanating from the 2019 Corolla provided Det. Loblack and Officer Francis probable cause to believe contraband would be found therein. Therefore, the automobile exception to the warrant requirement applies. Accordingly, the Second Motion to Suppress will be denied.

An Order consistent with this Memorandum Opinion will be concurrently entered.

DATED: May 5, 2023

_____
**Kathleen Mackay**
Judge of the Superior Court
of the Virgin Islands

**ATTEST:**
**TAMARA CHARLES**
Clerk of the Court

BY: _____
for **LATOYA CAMACHO**
Court Clerk Supervisor 05 / 08 / 23