IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**
June 15, 2023 08:22 AM
ST-2012-CV-00239
**TAMARA CHARLES
CLERK OF THE COURT**

### IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| **FIRSTBANK PUERTO RICO,** | ) | **CASE NO. ST-2012-CV-00239** |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| **EDMOND WEBSTER a/k/a EDMOND** | ) | |
| **R. WEBSTER, BERNICE WEBSTER,** | ) | ACTION FOR DEBT, |
| **CLEVE E. WEBSTER a/k/a CLEVE** | ) | FORECLOSURE OF LIENS, |
| **WEBSTER, OASIS DEVELOPMENT, LLC,** | ) | and SPECIFIC PERFORMANCE |
| **and TRIUMPH DEVELOPMENT, LLC,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| **NOVELLE JOSEPH,** | ) | |
| Intervenor/Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| **FIRSTBANK PUERTO RICO,** | ) | |
| **EDMOND WEBSTER a/k/a EDMOND** | ) | ACTION FOR REPLEVIN, |
| **R. WEBSTER, BERNICE WEBSTER,** | ) | CONVERSION, ACCOUNTING, |
| **CLEVE E. WEBSTER a/k/a CLEVE** | ) | DEBT, UNJUST ENRICHMENT, |
| **WEBSTER, OASIS DEVELOPMENT, LLC,** | ) | and PUNITIVE DAMAGES |
| **and TRIUMPH DEVELOPMENT, LLC,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| **FIRSTBANK PUERTO RICO,** | ) | |
| Counterclaimant, | ) | |
| vs. | ) | |
| | ) | |
| **NOVELLE JOSEPH and the OFFICE** | ) | |
| **OF THE VIRGIN ISLANDS MARSHAL,** | ) | Cite as <u>2023 VI Super 33</u> |
| | ) | |
| Counterclaim Defendants. | ) | |

**FOR PUBLICATION**

**APPEARANCES:**

**JUSTIN K. HOLCOMBE, Esq.**
**LISA MICHELLE KÖMIVES, Esq.**
Dudley Newman Feuerzeig, LLP
St. Thomas, U.S.V.I.
*Attorneys for Plaintiff and Intervenor*
*Defendant, FirstBank Puerto Rico*

**STYLISH E. WILLIS, Esq.**
St. Thomas, U.S.V.I.
*Attorney for Intervenor, Novelle Joseph*

**DARREN JOHN-BAPTISTE, Esq.**
Law Offices of Darren John-Baptiste
St. Thomas, U.S.V.I.
*Attorney for Defendants, Edmond Webster,*
*Bernice Webster, Cleve Webster, Oasis*
*Development, LLC, and Triumph*
*Development, LLC*

**MACKAY, KATHLEEN,** Judge

## MEMORANDUM OPINION

¶1 **THIS MATTER** is before the Court on FirstBank Puerto Rico's ("FirstBank") Motion for Summary Judgment Against Intervenor Novelle Joseph, filed March 29, 2019.[1] For the reasons set forth herein, the Court will grant FirstBank's motion in part and deny it in part.

## BACKGROUND AND PROCEDURAL POSTURE

¶2 Intervenor Novelle Joseph's ("Joseph" or "Intervenor") Complaint is the result of an unusual fact pattern in FirstBank's action for foreclosure: after judgment and an order of foreclosure were entered, Defendants Edmond Webster, Bernice Webster, Cleve Webster, Triumph Development, LLC, and Oasis Development, LLC (collectively, the "Websters" or "Underlying Defendants") appealed the case and ultimately secured a reversal of the judgment and

---

[1] The Motion is fully briefed. Novelle Joseph filed his Opposition on April 29, 2019, and FirstBank filed its Reply on May 17, 2019.

order of foreclosure. But in the meantime, the properties at issue had been sold at Marshal's Sale to a third party, Intervenor Novelle Joseph. After the Marshal's Sale was confirmed, Joseph filed suit against FirstBank to obtain a refund of the monies he paid to complete the purchase as the successful bidder at the Marshal's Sale. Joseph's six-count complaint in intervention alleges replevin, conversion, accounting, debt, unjust enrichment and punitive damages ("Intervenor Complaint"). Pursuant to court order, and since the filing of Joseph's Intervenor Complaint, FirstBank tendered and returned all funds to Joseph.[2]

¶3     FirstBank moves for summary judgment on all of Joseph's claims, contending that because Joseph has already received a full refund of the monies he tendered to purchase the properties at the Marshal's Sale and because there are no genuine disputes of material fact, it would be equitable for the Court to grant summary judgment.[3] Joseph opposes FirstBank, claiming there are genuine issues of material fact barring summary judgment.

¶4     FirstBank's Statement of Undisputed Material Facts ("SUMF") consists of twenty (20) paragraphs. Joseph's Responses to Undisputed Facts ("RUF") agreed with all 20 paragraphs of the SUMF. Joseph opposed the motion for summary judgment and filed a Statement of Additional Facts ("SOAF") that states seventeen (17) additional facts. However, none of those facts contradict First Bank's SUMF. In addition, FirstBank's Reply did not challenge anything from Joseph's SOAF. Therefore, the facts proffered by both FirstBank and Joseph are unchallenged. Neither party having challenged the undisputed facts proffered by the other, the Court will accept as

---

[2] A more complete set of facts regarding FirstBank's claims against the Defendants is delineated in *FirstBank v. Webster*, 2023 VI Super 22U.

[3] Count VI of the Intervenor Complaint is a claim for punitive damages. However, FirstBank's Motion for Summary Judgment does not address the claim for punitive damages. Therefore, the Court will not address that claim herein and to the extent the motion for summary judgment sought dismissal of that claim, that portion of the motion will be denied.

undisputed all facts submitted by both sides for purposes of deciding the subject motion for summary judgment.[4] The facts are set forth in the next section.

## UNDISPUTED FACTS[5]

¶5    This matter originated on May 11, 2012, when FirstBank filed a complaint against the Underlying Defendants, seeking a judgment of debt and foreclosure. The complaint alleges the Websters defaulted on a series of construction loans and loan modifications FirstBank issued the Websters from 2007 to 2010, and notes executed by the Websters in favor of FirstBank over the same time period.[6] After lengthy motions practice, on July 7, 2016, the Superior Court entered final judgment and order of foreclosure in favor of FirstBank and ordered the mortgaged properties sold by the Office of the Virgin Islands Marshal ("OVIM") at Marshal's sale. The Websters timely filed an appeal but the matter continued to a Marshal's sale on December 14, 2016 ("Marshal's Sale"). Joseph was unaware the Websters had appealed the final judgment and order of foreclosure when he bid at the Marshal's Sale. Joseph did not obtain any appraisals, legal advice, evaluations, or title searches prior to the Marshal's Sale.[7] At the Marshal's Sale, Joseph heard "verbatim the terms of the sale" read by the Marshal. Joseph was the winning bidder with a bid of One Million, Seven Hundred Five Thousand dollars ($1,705,000.00). Thereafter, he immediately paid the

---

[4] A few of FirstBank's unchallenged facts cite to Novelle Joseph's deposition testimony. However, the Court finds that the "facts" include inferences not found in the deposition testimony. But because Joseph agreed with FirstBank's facts, the Court has determined it would be error to correct or make more precise the facts offered by FirstBank.

[5] Much of the "undisputed facts" submitted by First Bank are not material to the motion for summary judgment against Intervenor Joseph as the majority of the undisputed facts pertain only to FirstBank's claims for debt and foreclosure against the Websters and not on the dispute between Joseph and FirstBank. Therefore, the Court has condensed the non-pertinent facts. Similarly, Intervenor Joseph submitted "additional facts" that are not material to the motion for summary judgment, but the Court will include them here for purposes of completeness.

[6] A complete recitation of the details surrounding the loans and notes may be found at *FirstBank Puerto Rico v. Webster*, 2023 VI Super 22U, where the Court addressed a motion for summary judgment filed by FirstBank against the Underlying Defendants. Therein, the Court granted partial summary judgment to FirstBank and found that the Websters are indebted to FirstBank for the sum of $5,252,143,71.

[7] *See* SUMF at ¶ 7, citing Exhibit 2, at 14:15-19, 39:2-40:7.

required ten percent (10%) of the bid, One Hundred Seventy Thousand, Five Hundred dollars ($170,500.00), and paid the remaining One Million, Five Hundred Thirty-Four Thousand, Five Hundred dollars ($1,534,500.00) to the Cashier of the Superior Court, on January 11, 2017.

¶6     Joseph had previously held the funds he used to make the payments within a checking account, which "may not have been interest bearing."[8] After making his final payment to the Cashier of the Superior Court, Joseph consulted with his counsel regarding the property and a purchase offer he received from the Websters.[9] Joseph knew tenants were occupying the premises and he had a right to collect rent payments, but he did not do so, nor did he demand the Websters return to him any rent they collected.[10] Thereafter, Joseph obtained a survey of the property and determined there were "a lot of encroachments on the property" which "took his interest away" and "discourage[d] [him] from becoming the owner" because "without the treatment plant, the property is no value."[11]

¶7     The Superior Court entered an order confirming the Marshal's Sale on February 24, 2017, with the redemption period scheduled to expire on August 24, 2017.[12] Shortly after the order confirming the Marshal's Sale was entered, OVIM turned over the sale proceeds to FirstBank as the judgment creditor.[13]

¶8     However, in the interim, the Webster's appeal of the judgment and order of foreclosure remained pending. On April 24, 2017, the V.I. Supreme Court issued an opinion vacating the judgment and order of foreclosure, as well as all of the Superior Court's dispositive rulings on the

---

[8] *See* SUMF at ¶ 9, citing Exhibit 2, at 38.

[9] *See* SUMF at ¶ 10, citing Exhibit 2, at 33:9-25, 34:1-8, 52:14-17.

[10] *See* SUMF at ¶ 11, citing Exhibit 2, at 44:21-23, 57:8-15, 93:11-17.

[11] *See* SUMF at ¶¶ 12-13, citing Exhibit 2 at 34:19-20, 55:5-6, 35:15.

[12] *See* SUMF at ¶ 15. Notably, however, in his SOAF, at ¶ 3, Joseph contends FirstBank never served him with a copy of its motion for order confirming sale (attached as Exhibit 1 to FirstBank's SUMF).

[13] *See* SUMF at ¶ 15.

parties' claims. *Webster v. FirstBank Puerto Rico*, 66 V.I. 514, 520 (V.I. 2017). The Supreme Court's decision did not address the Marshal's Sale; it focused primarily on the Superior Court's failure to ensure the parties participated in statutorily required mediation, pursuant to title 28, section 531(b) of the Virgin Islands Code, before entering orders disposing of FirstBank's claims. *Id.* at 520-21. Noting that the parties went to mediation *after* the Superior Court entered a series of orders granting partial summary judgment in favor of FirstBank, the Supreme Court determined FirstBank would have no motivation to pursue a "good faith" resolution of the matter through mediation, since FirstBank "was aware that if it chose not to settle through mediation, it would receive a complete recovery on all its claims." *Id.* at 520. The Supreme Court remanded the case to the Superior Court for immediate referral to mediation and assignment to a different judge. *Id.* at 521.

¶9      Joseph learned of the Supreme Court's ruling after it was entered, from OVIM as well as FirstBank's counsel.[14] At that time OVIM also told Joseph the Marshal's Sale was deemed null and void as a result of the Supreme Court decision,[15] but counsel for FirstBank informed Joseph the Marshal's Sale was valid.[16] Thereafter, Joseph verbally demanded FirstBank return his money.[17] FirstBank declined, so Joseph engaged legal counsel who, on August 14, 2017, served a letter on FirstBank and OVIM, demanding return of the proceeds from the Marshal's Sale.[18] On August 24, 2017, the redemption period expired, and the next day, Joseph demanded OVIM prepare the Marshal's deed ("Deed") for the property and deliver it within two weeks, or, in the

---

[14] *See* SOAF at ¶ 7, citing Exhibit A at 42:2-25, 43:1-23.
[15] *See* SOAF at ¶ 8, citing Exhibit A at 42:2-25, 43:1-23.
[16] *See* SOAF at ¶ 9, citing Exhibit A at 42:2-25, 43:1-23.
[17] *See* SOAF at ¶ 10, citing Exhibit A at 68:8-23.
[18] *See* SOAF at ¶ 13, citing Exhibit C.

event the Deed could not be prepared, Joseph demanded the full amount of sale proceeds plus paccrued interest.[19,20]

¶10 Ultimately, on October 26, 2017, Joseph filed an Emergency Motion to Intervene as Plaintiff and the six-count Intervenor Complaint against FirstBank and the Websters. Joseph's Intervenor Complaint includes counts for replevin, conversion, accounting, debt, unjust enrichment, and punitive damages. However only five of the six counts are directed at FirstBank (in addition to the Websters); Count III, a claim for an accounting, is only directed against the Websters.[21] Joseph's complaint sought a return of the purchase price from FirstBank and continues to seek interest thereon and punitive damages from FirstBank.[22]

¶11 On December 15, 2017, Joseph filed an Expedited Motion for Return of Intervenor's Funds, requesting an immediate refund of the sale proceeds. The Court granted Joseph's Motion to Intervene, later granted Joseph's Motion requesting that the funds be returned to him, vacated the order that had confirmed the Marshal's Sale and ordered FirstBank to return the proceeds of the Marshal's Sale to Joseph by no later than April 30, 2018.[23] FirstBank filed a motion for reconsideration of the March 5 Order. The Court issued an order staying enforcement of the March 5 Order, pending its ruling on FirstBank's motion for reconsideration.[24] On July 18, 2018, the Court entered a memorandum opinion granting reconsideration but upholding its March 5 Order directing FirstBank to return all funds to Joseph within twenty days ("2018 Opinion").[25] FirstBank

---

[19] *See* SUMF at ¶ 16, citing Exhibit 3.

[20] There is no indication in the summary judgment record that OVIM prepared the Deed nor did FirstBank refund Joseph the sale proceeds at that time.

[21] Because Count III does not involve FirstBank, the Court need not analyze the claim for an accounting in the instant opinion.

[22] From the Websters, Joseph seeks all rents and/or profits on the rents the Websters collected after the Marshal's Sale and interest thereon. Joseph also seeks punitive damages from the Websters.

[23] *See* Order, entered March 5, 2018.

[24] *See* Order, entered June 7, 2018.

[25] *See FirstBank Puerto Rico v. Webster*, No. ST-12-CV-239, 2018 WL 3812917 (V.I. Super. Ct. July 18, 2018).

complied and delivered to Joseph a check for the full amount of the proceeds, $1,705,000.00, on August 15, 2018.

¶12 FirstBank now moves the Court to enter summary judgment on Joseph's claims in this matter, contending there are no genuine issues of material fact and there is no reason Joseph should be awarded interest on the sale proceeds for the period of time he went without those funds.

## LEGAL STANDARD

¶13 Summary Judgment is governed by Rule 56 of the Virgin Islands Rules of Civil Procedure, which states, in pertinent part:

> A party may move for summary judgment, identifying each claim or defense or the part of each claim or defense on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

V.I. R. CIV. P. 56(a). Rule 56 further provides that "[e]ach summary judgment motion shall include a statement of undisputed facts in a separate section within the motion" and that "[e]ach paragraph stating an undisputed fact shall be serially numbered and each shall be supported by affidavit(s) or citations identifying specifically the location(s) of the material(s) in the record relied upon regarding such fact." V.I. R. CIV. P. 56(c)(1). The Virgin Islands Supreme Court has held that summary judgment is appropriate when after "considering all of the evidence, accepting the nonmoving party's evidence as true, and drawing all reasonable inferences in favor of the nonmoving party, the court concludes that a reasonable jury could only enter judgment in favor of the moving party." *Antilles School, Inc. v. Lembach*, 64 V.I. 400, 409 (V.I. 2016). Summary judgment is a "drastic remedy" and only proper where "the pleadings, the discovery and disclosure materials on file . . . show that there is no genuine issue as to any material fact[.]" *James v. Mosler*,

2021 VI SUPER 53U, ¶ 10 (citing *Anthony v. FirstBank Virgin Islands*, 58 V.I. 224, 228 (V.I. 2013)).

## DISCUSSION

### A. Joseph's claims for Replevin, Conversion, and Unjust Enrichment no longer support any remedy from this Court.

¶14     Before assessing the primary focus of FirstBank's motion for summary judgment, the Court finds it necessary to dispose of a preliminary issue.

¶15     FirstBank argues that Joseph's claims are without merit and/or are moot and as a result the Intervenor Complaint should be dismissed. But in his opposition Joseph argues that "whether the granting of the relief sought by Joseph was in Replevin, Conversion, Debt or Unjust Enrichment, Joseph prevailed on his claim for the return of the Marshal's Sale Proceeds" pursuant to this Court's March 5, 2018 Order granting Joseph the return of the sale proceeds and 2018 Opinion upholding such Order, and thus Joseph's Intervenor Complaint should not be dismissed.[26] In its reply, FirstBank points out that Joseph received restitution but the Court did not address any of the claims set forth in Joseph's complaint, so FirstBank argues that Joseph did not "prevail" on any of his claims. In his original Intervenor Complaint, Joseph's allegations against FirstBank under

---

[26] *See* Joseph's Opp. at pp. 5-6.

Count I (Replevin),[27] Count II (Conversion),[28] and Count V (Unjust Enrichment),[29] request only a return of the principal amount paid for the disputed properties, $1,705,000.00, with no mention of interest. Count IV, Debt, articulates a claim for the principal amount *and* interest.[30]

¶16 In the 2018 Opinion, this Court granted restitution to Joseph, ordering FirstBank to return to Joseph the $1,705,000.00 he paid following the Marshal's Sale, but the Court did not explicitly rule on any of Joseph's claims articulated in the Intervenor Complaint. *Webster*, 2018 WL 3812917, at *7 (stating the decision was "not an issuance of injunctive relief[,] [n]or is the Court granting partial summary judgment").

¶17 Nevertheless, to the extent the Court must identify which of Joseph's claims enabled the restitution that the Court granted in the Court's March 5 Order and the subsequent 2018 Opinion,

---

[27] *See* Joseph's Compl. in Intervention, filed Oct. 26, 2017, at ¶¶28-29 (claiming "Defendant FirstBank's continued possession of the auction proceeds, $1,705,000.000, subsequent to April 24, 2017 was and is wrongful in accordance with the Virgin Islands Supreme Court's Opinion filed in this matter" and that "subsequent to April 24, 2017 [Joseph] demanded Defendant FirstBank to return the $1,705,000.00 auction proceeds; however, Defendant FirstBank has failed and/or refused to return to [Joseph] his personal property described as the $1,705,000.00 auction proceeds").

[28] *See* Joseph's Compl. in Intervention, filed Oct. 26, 2017, at ¶¶32-34 (stating "Defendant FirstBank is unlawfully and/or wrongfully exercising control over the $1,705,000.00 auction proceeds and is attempting to retain the funds with the intent to permanently exclude [Joseph] from his ownership of the said auction proceeds"; that "Defendant FirstBank's sole and exclusive control over the auction proceeds is inconsistent with [Joseph's] right to control of his property, $1,705,000.00"; and that "justice requires Defendant FirstBank to pay [Joseph] the $1,705,000.00 auction proceeds converted by Defendant FirstBank from [Joseph]").

[29] *See* Joseph's Compl. in Intervention, filed Oct. 26, 2017, at ¶¶49-51 (claiming "Defendant FirstBank has received $1,75,000.00 paid by [Joseph] for the auctioned properties and Defendants Websters are in possession of the auctioned properties without having redeemed the auctioned properties all to the detriment of [Joseph]; "Defendant FirstBank . . . [has] unjustly enriched [itself] at the expense and detriment of [Joseph] as Defendant FirstBank has failed and/or refused to refund [Joseph] the $1,705,000.00 . . ."; and that Joseph "is entitled to the $1,705,000.00 cash as payment from Defendant FirstBank, . . . preventing the unjust enrichment of Defendant FirstBank at the expense and detriment of [Joseph]").

[30] *See* Joseph's Compl. in Intervention, at ¶43 (stating "Defendant FirstBank, in addition to the $1,705,000.00 owed to [Joseph], is also indebted to [Joseph] for interest accruing from the date of the filing of the Supreme Court's Opinion (April 24, 2017) to the present, at the legal rate, on the $1,705,000.00 received by Defendant FirstBank from the sale of the auctioned properties").

the Court now finds that Joseph's claim for the return of the principal amount of the sale proceeds fell within the claim for debt (Count IV).

¶18    An action for debt requires the plaintiff to only demonstrate that (1) the defendant owes a certain amount and (2) the defendant is or should be obligated to pay that amount. *Greenleaf Commons, LLC v. St. John Day Spa & Salon, LLC*, 2021 VI Super 2U ¶ 9 (citing *Carlos Warehouse v. Thomas*, 64 V.I. 173, 193 (V.I. Super. Ct. 2016) (performing a *Banks* analysis to determine the most appropriate rule for the U.S. Virgin Islands)). The Court finds that Joseph's claim for debt adequately addresses the relief already granted, because the Court found that FirstBank owed Joseph a sum certain—the sale proceeds—and that FirstBank was obligated to pay that sum to Joseph, following the V.I. Supreme Court's reversal of the judgment and order of foreclosure. Therefore, FirstBank's motion for summary judgment on the portion of the claim for debt that claimed reimbursement of the purchase funds will be denied. However, the Court limits this finding of success on the claim for debt only to the return of the principal amount of the funds, and the Court will address the issue of interest in the following section.

¶19    The Court further finds none of Joseph's other claims for a return of the sale proceeds,

Counts I (replevin)[31], Count II (conversion)[32], nor Count V (unjust enrichment)[33], support a return

of the sale proceeds. As such the Court will grant summary judgment to FirstBank on Count I

(replevin), Count II (conversion), and Count V (unjust enrichment). Further, because those three

claims only address the return of the principal amount Joseph expended at the Marshal's Sale and

---

[31] Joseph does not have a valid claim for replevin. The Virgin Islands prejudgment replevin statute is set forth in Title 5 V.I.C. § 211. *V&A Jewelry, Inc. v. Shalhout*, 2015 V.I. LEXIS 177, at *2 (V.I. Super 2015). That statute addresses an action to recover possession of personal property and requires that the owner must particularly describe the subject property. Title 5 V.I.C. § 212. On a similar vein, the Superior Court has held that replevin will not lie for the recovery of money unless it is specifically described. *Gray v. Moorhead*, 5 V.I. 19, 23-24 (V.I. Super 1964); *see also* 66 Am. Jur. 2d Replevin § 1 (the primary relief sought in replevin is the return of the identical property). In addition, Black's Law Dictionary defines replevin as a "lawsuit to repossess personal property wrongfully taken or detained by the defendant." REPLEVIN, Black's Law Dictionary (11th ed. 2019). Joseph has not described with particularity the funds he sought to recover. Furthermore, they were likely tendered to the Court and in turn to FirstBank, by bank check. In addition, none of the facts in this case suggest FirstBank committed any wrongful act when it received the proceeds of the sale, as explained in the body of this opinion. Nor were the proceeds detained for an excessive period of time, as explained in the body of this opinion. Thus, Joseph's claim for replevin fails.

[32] Joseph does not have a valid claim for conversion. To recover on a claim for conversion, plaintiff must prove that defendant "intentionally or wrongfully exercise[d] acts of ownership, control or dominion over personal property to which he has no right of possession at the time . . ." *Ross v. Hodge*, 58 V.I. 292, 308, (V.I. 2013). Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel. *Id.* at 308 (quoting RESTATEMENT (SECOND) OF TORTS § 222 A(1) (1965)); *Penn v. Mosley*, 67 V.I. 879, 898 (V.I. 2017). The definition of personal property includes "money." 1 V.I.C. § 41. However, as more fully explained in the body of this opinion, the Court finds that FirstBank did not wrongfully exercise ownership or control over the proceeds of the sale of the property sold at Marshal's Sale; indeed, the funds were lawfully tendered to FirstBank by OVIM after the sale was confirmed. So, Joseph's claim for conversion fails.

[33] Joseph does not have a valid claim for unjust enrichment. In the Virgin Islands, unjust enrichment requires a plaintiff to prove, (1) that the defendant was enriched, (2) that such enrichment was at the plaintiff's expense, (3) that the defendant had appreciation or knowledge of the benefit, and (4) that the circumstances were such that in equity or good conscience the defendant should return the money or property to the plaintiff. *Walters v. Walters*, 60 V.I. 768, 779-780 (V.I. 2014). As explained in the body of this opinion, FirstBank having obtained the sale proceeds through a lawful foreclosure matter, the Court find that FirstBank's acceptance of the sale proceeds did not enrich it (as FirstBank's mortgage liens were foreclosed as part of the process). Nor was FirstBank's acceptance of the sale proceeds at the expense of Joseph, as he was the successful bidder at the Marshal's Sale. Therefore, Joseph's claim for unjust enrichment fails.

the claim for the return of the principal amount does not fall within any of those claims, there is no longer any substance to those claims with respect to FirstBank.[34]

¶20 Additionally, in Joseph's original complaint in intervention, Count III, Accounting, makes allegations against the Websters, but none against FirstBank. Accordingly, Count III is not relevant in the instant motion, and the Court will not address it here.

### B. Joseph is not entitled to interest.[35]

¶21 In its 2018 Opinion, this Court noted "there are other issues that will require further consideration by the Court, such as Joseph's claims for interest on the money FirstBank has in its possession . . ." *Webster*, 2018 WL 3812917, at *6 n.16. Having determined that Joseph prevailed under his claim for debt because the sale proceeds were ordered returned to him, the Court will now further analyze the remaining substance of Count IV (Debt), which is the only claim in the Intervenor Complaint seeking an award of interest on the sale proceeds.

¶22 In its motion for summary judgment, FirstBank argues that (1) the foreclosure process does not afford a third-party bidder the right to recover interest on sale proceeds disbursed to a judgment

---

[34] Additionally, as discussed, *supra*, at notes 31, 32, and 33, the Court finds that Joseph's claims for replevin, conversion and unjust enrichment, each fail on their own bases and would not provide grounds upon which the Court could find Joseph was entitled to reimbursement of the principal amount.

[35] The Court notes that within claim for Debt (Count IV) of Joseph's Intervenor Complaint, he requests interest, alleging "Defendant FirstBank is indebted to Plaintiff in Intervention in the amount of $1,705,000 00 plus interest at the legal rate." *See* Joseph's Compl., at ¶ 44. However, within his prayer for relief, Joseph requests "interest accrued on the auction proceeds at the legal rate, plus post judgment interest," *See* Joseph's Compl., at 12. Finally, within the briefing for the instant motion for summary judgment, the parties appear to use "interest" and "prejudgment interest" interchangeably. In the motion for summary judgment, FirstBank argues Joseph is not entitled to "interest." *See* FirstBank's Mot. Sum. J. Additionally, Joseph specifically cites to 11 V.I.C. § 951(a), which governs the award of prejudgment interest, requests "interest" on the funds from the date of the Supreme Court decision, April 24, 2017, until August 15, 2018, and ultimately requests "prejudgment interest." *See* Joseph's Opp., at 6-10. Despite the interchangeable use of the terms "interest," "prejudgment interest," and "post judgment interest," Joseph's claim is for interest that accrued between the date the V.I. Supreme Court issued its decision (April 24, 2017) and the date FirstBank made restitution to Joseph (August 15, 2018).

creditor and later returned after the sale is vacated, and (2) granting interest to Joseph for the period of time FirstBank held the sale proceeds following the Supreme Court's April 24, 2017, ruling would be inequitable. FirstBank claims that Joseph participated in the Marshal's Sale with knowledge that his bid and potential payment would be subject to established procedures governing the foreclosure and sale of property. FirstBank contends that Joseph "knew" it might take time to acquire title to the property due to such procedures, and those delays were outside the control of FirstBank. Therefore, FirstBank argues it should not be required to pay interest to Joseph simply because there were delays in the underlying foreclosure process. FirstBank further claims that Joseph was unharmed by the delay, since the funds he used were previously held in a checking account paying "little or no interest." FirstBank states that because Joseph failed to mitigate his damages by collecting rents from the tenants of the disputed property, which could have resulted in a return on his investment. Finally, FirstBank claims that because Joseph became disinterested in the property following the sale, due to the encroachments discovered in the survey he completed, Joseph ended up in a better position when he was reimbursed for his purchase than if he had acquired title to the properties.

¶23  In his opposition, Joseph contends he is still entitled to interest on the sale proceeds, pursuant to 11 V.I.C. § 951(a)(1) and/or 11 V.I.C. § 951(a)(2), and that an award of interest would be equivalent to prejudgment interest because the funds were retained by FirstBank "beyond a reasonable time without the owner's consent."[36] Joseph concedes that FirstBank initially obtained lawful possession of the sale proceeds when the Superior Court tendered the sums to FirstBank;

---

[36] 11 V.I.C. § 951(a) states "The rate of interest shall be nine (9%) per centum per annum on— (1) all monies which have become due; (2) money received to the use of another and retained beyond a reasonable time without the owner's consent, either express or implied."

however, Joseph claims the Supreme Court's April 24, 2017 decision vacating all dispositive rulings from the Superior Court includes the confirmation of Marshal's Sale from February 24, 2017, and thereby vacated the Marshal's Sale, which effectively entitled Joseph to a return of his funds immediately. Therefore, Joseph claims he is entitled to interest commencing from April 25, 2017—the day after the Supreme Court opinion issued—through and including August 14, 2018—the day before FirstBank ultimately reimbursed Joseph of the full amount paid at the Marshal's Sale. He argues the Supreme Court mandate rendered FirstBank's possession of the proceeds unlawful as the case could not proceed to mediation as long as FirstBank had possession and control of the sale proceeds, but that FirstBank did not immediately tender the funds. To support that argument, Joseph points to the Superior Court Order dated March 5, 2018, that stated, "to allow FirstBank to keep possession of the bid funds . . . prior to the parties returning to mediation runs diametrically opposed to the Supreme Court's mandate" and that "were this Court to proceed as FirstBank suggests and the Court allowed FirstBank to keep the funds while the matter goes back to mediation, FirstBank would be in an even stronger position than when it last mediated the matter as it would then have the funds from the sale in its possession."[37] Finally, Joseph contends that FirstBank received tangible benefits, such as the use of Joseph's funds and the actual or constructive earning of interest on those funds, beginning April 25, 2017. Therefore, Joseph claims he is entitled to the statutory rate of prejudgment interest of nine percent (9%) per centum per annum.

---

[37] *See* Order, entered March 5, 2018. However, the Court must point out that had Joseph already obtained the Deed from OVIM when the final judgment was vacated, Joseph likely would not have been able to overturn the sale, and FirstBank would likely have been required to put the funds in the registry of the Court while the parties returned to mediation.

¶24    In its reply, FirstBank argues the award of interest would be inappropriate and result in a windfall for Joseph. FirstBank argues that the statute Joseph cites, 11 V.I.C. § 951, does not allow for an award of interest on tort claims. FirstBank contends that when Joseph paid the balance of the purchase price, he "knew" an appeal was pending. Further, FirstBank emphasizes that Joseph conducted no due diligence and sought no legal advice before bidding at the Marshal's Sale or paying the Cashier. FirstBank reiterates that Joseph ended up in a better position, having been reimbursed the sale proceeds rather than possessing the property on which he discovered numerous unforeseen encroachments after his purchase. Further, given that Joseph used funds from his checking account, had he left the funds in his account, he would not have received nine percent (9%) interest.

¶25    The V.I. Supreme Court's decision did not address the Marshal's Sale that had already occurred. But in the 2018 Opinion, this Court performed a *Banks* analysis resulting in the determination that a subpart of §74 of the Restatement (First) of Restitution and Unjust Enrichment is the best rule for the Virgin Islands. *Webster*, 2018 WL 3812917, at *7 (quoting RESTATEMENT (FIRST) OF RESTITUTION: PROCEDURE § 74 cmt. i).[38] The Court adopted this rule and found that Joseph was entitled to the return of his funds, but the Court did not make the determination of whether Joseph is entitled to interest on those funds. *Id.* at *6 n.16 (stating "certainly, there are . . . issues that will require further consideration by the Court, such as Joseph's claims for interest on the money FirstBank has in its possession . . . [which is among the] issues would be present in any

---

[38] Specifically, the Court adopted cmt. i of §74, which states:

> A person, other than the judgment creditor or his attorney, who purchases at a valid execution sale upon a judgment which is not void but which is subsequently reversed is entitled to retain the subject matter if, before reversal, he has obtained the legal title and has paid value therefor.

event because of the delay between the judicial sale and now, which are partially the result of the unusual circumstances and facts of this case.").

¶26 After considerable research, the Court could find no law to support Joseph's claim for interest. The statutory scheme for property foreclosures, set forth in 5 V.I.C. § 23 and 28 V.I.C. § 43, contains no provision requiring an award of interest to a third-party buyer, such as Joseph in this litigation. Neither did the formal Terms of Sale issued by OVIM for the subject sale. Although the Court adopted a subpart of §74, of the Restatement (First) of Restitution and found that Joseph was entitled to reimbursement of the purchase funds, the Court finds no provision in the Restatements of Restitution nor Restatements of Judgments to support an award of interest under the facts before the Court. Indeed, the Restatement of Restitution specifically states this is not an area it generally covers and points the reader to statutory schemes.[39]

¶27 Joseph relies upon 11 V.I.C. § 951(a)(1) and/or 11 V.I.C. § 951(a)(2) to support his claim for interest. Section 951(a) states "The rate of interest shall be nine (9%) per centum per annum on— (1) all monies which have become due; (2) money received to the use of another and retained beyond a reasonable time without the owner's consent, either express or implied." However, in response, FirstBank cites to a Superior Court case which held that 11 V.I.C. § 951 is not a proper

---

[39] Restatement (Third) of Restitution and Unjust Enrichment § 18, Judgments Subsequently Reversed or Avoided includes numerous comments to this effect. For example, cmt. a states, *inter alia*, "[R]ules governing judicial sales tend to arise in specialized commercial settings, notably foreclosure and bankruptcy, where they are the subject both of extensive statutory regulation and of detailed treatment by more specialized authorities." Cmt. f includes, *inter alia*, "[I]t is important to note that the various incidents of an execution sale are frequently regulated by statute, and that some statutes provide broader protection to purchasers than do the rules of common law."

Restatement (Third) Of Restitution and Unjust Enrichment § 53, Use Value, Proceeds, Consequential Gains, also contains similar language. For example, cmt. e, states that "Because the availability of prejudgment interest is extensively regulated by local statute and decisional law, the reader's initial recourse, in addressing any issue of supplemental enrichment that might be so characterized, must be to the local authorities." That comment further states, "The law of the various U.S. jurisdictions concerning the availability of prejudgment interest is outside the scope of this Restatement."

mechanism for seeking prejudgment interest arising from a non-contractual action—e.g., the sale of the collateral—because the language does not implicate the assessment of damages against a tortfeasor for injuries committed upon an unwilling victim. *Bank of Nova Scotia v. Four Winds Plaza Corp.*, 56 V.I. 45, 57 (V.I. Super. Ct. 2012). FirstBank also cites a case that held section 951(a) is not a proper mechanism for seeking prejudgment interest arising from a non-contractual tort. *Bookworm, Inc. v. Tirado*, 44 V.I. 300, 305 (V.I. Super Ct. 2002). *Bookworm, Inc. v, Tirado* expounded that "the language that . . . interest may be awarded either for all monies that have become due or where there is a contract with an unspecified rate term implicates the relationship among parties who are bound by either an explicit or implicit contract, not the assessment of damages against a tortfeasor for injuries committed upon an unwilling victim." *Id.*

¶28     Similar to *Bank of Nova Scotia v. Four Winds Plaza Corporation*, in the instant matter, the issue arises from the sale of collateral. Further, and perhaps more importantly, the Court finds it indisputable that FirstBank did not withhold funds from Joseph after they had become due, nor did it hold the funds beyond a reasonable time, adhering to the deadline imposed by the Court in the 2018 Opinion and corresponding order. The Court finds FirstBank did not contribute to the delays in the matter, nor the reversal of the judgment against the Websters, and FirstBank reimbursed Joseph within the time allotted in the 2018 Opinion.[40] The Court finds that FirstBank did not retain the funds beyond a reasonable time without the owner's consent, as required by 11 V.I.C. § 951(a)(2), because it paid the funds within the Court's deadline. Based upon these Virgin Islands

---

[40] The Court recognizes that FirstBank did not immediately refund the purchase money to Joseph as ordered in the March 5, 2018 Order, but it did immediately file a motion for reconsideration and asked the court to stay enforcement of the March 5, 2018 Order. On June 7, 2018, the Court granted FirstBank's motion to stay enforcement of the March 5, 2018 Order. The Court eventually upheld the order for a refund by order and opinion entered July 18, 2018, and FirstBank met the deadline set forth therein to refund to funds to Joseph.

cases and the facts of this case, the Court finds that § 951 does not provide a mechanism for Joseph to recover interest from FirstBank.

¶29    Even under the common law definition of debt, the Court finds Joseph has not met his burden to prove his entitlement to interest on the sale proceeds. Under Virgin Islands common law, an action for debt requires the plaintiff to demonstrate that (1) the defendant owes a certain amount and (2) the defendant is or should be obligated to pay that amount. *Greenleaf Commons, LLC*, 2021 VI Super 2U ¶ 9. The Court finds that FirstBank lawfully acquired the proceeds of the Marshal's Sale at the time the sale was confirmed. The Supreme Court decision did not address the Marshal's Sale and the redemption period had not expired when the Supreme Court issued its decision. While this Court has determined that Joseph prevailed on his claim for debt with respect to the return of the principal amount of sale proceeds, the Court finds that FirstBank did not act improperly under the decisions made by this Court or the V.I. Supreme Court. The complexity of this matter, as well as the unique fact pattern, yielded an extensive timeline of litigation, over which neither party had any control. FirstBank returned the funds to Joseph within the time allotted by this Court, and there is no basis to award interest for any other reason. Having rendered 11 V.I.C. § 951 inapplicable, the Court finds there is no mechanism under which the Court could determine an amount due.[41]

¶30    The Court finds there was no intentional wrongful action on the part of FirstBank, but the delays of the parties and the time necessary for the Court to conduct the *Banks* analysis, contributed

---

[41] Significantly, had the OVIM tendered title to Joseph before the Supreme Court decision was issued, Joseph would likely have been required to retain title and would not have been entitled to restitution, *Webster*, 2018 WL 3812917, at *7 (adopting RESTATEMENT (FIRST) OF RESTITUTION: PROCEDURE § 74 cmt. i). If the latter occurred, FirstBank would have likely been required to deposit the funds into the registry of the Court while the parties returned to mediation.

to a delay in the opinion substantiating the earlier order granting Joseph's motion for a return of

the funds.[42] As such, the Court finds that FirstBank did not act wrongfully nor was there an

unreasonable delay in making restitution to Joseph, once the Court entered its 2018 Opinion.

Accordingly, considering the circumstances of this unique case, the Court finds there are no

disputed material facts with respect to the entitlement of interest on the sale proceeds, and it will

grant FirstBank's motion for summary judgment with respect to Joseph's claim for interest in

Count IV, Debt.

## CONCLUSION

¶31     The Court finds that Joseph is not entitled to interest under Counts I, II, or V (Replevin,

Conversion, and Unjust Enrichment, respectively), and those claims are no longer live for the

purpose of restitution of the principal amount of sale proceeds, since Joseph has already received

reimbursement therefor. So, the Court will grant summary judgment on Counts I, II, and V with

respect to FirstBank. Further, the Court need not address Count III (Accounting), as it does not

apply to FirstBank in the Intervenor Complaint. The Court will grant summary judgment on the

portion of Count IV (Debt) that seeks interest on the sale proceeds. However, the Court will deny

summary judgment on the portion of Count IV (Debt) that seeks restitution of the principal amount.

Because the parties did not address Count VI (Punitive Damages), the Court does not address it

herein, but for purposes of completeness, the Court will deny the motion for summary judgment

on the claim for punitive damages.

---

[42] Of less significance, Joseph did not have the funds in an interest-bearing account before he purchased the property, so the Court cannot find he lost profits or proceeds on those funds. In addition, his claim for an accounting from the Websters is still pending, and that claim could potentially compensate him for the loss of the use of his money.

An order consistent herewith will immediately follow.

DATED:   June  15 , 2023

**Kathleen Mackay**
Judge of the Superior Court
of the Virgin Islands

**ATTEST:**
**TAMARA CHARLES**
Clerk of the Court

BY: _____
   for **LATOYA CAMACHO**
   Court Clerk Supervisor  06/ 15 / 23